# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00438-CV

**Wesco Distribution, Inc., Appellant**

**v.**

**Westport Group, Inc., Appellee**

### FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT
### NO. 23,999, HONORABLE HAROLD R. TOWSLEE, JUDGE PRESIDING

## O P I N I O N

Appellant, Wesco Distribution, Inc., appeals the judgment of the district court of Bastrop County granting appellee Westport Group Inc.'s motion for summary judgment to remove a materialman's lien and awarding Westport attorney's fees in the amount of $16,140.77. Wesco raises two issues on appeal, asserting: (1) the district court misinterpreted the notice provisions of sections 53.003 and 53.056 of the property code, *see* Tex. Prop. Code Ann. §§ 53.003, .056 (West 2002); and (2) the district court abused its discretion in awarding Westport attorney's fees. We affirm the judgment of the district court.

## FACTUAL BACKGROUND

Westport, a general contractor, agreed to build a dental office for E&M Properties and hired J&D Electric as its electrical subcontractor for the project. J&D Electric agreed to provide all the labor and materials necessary to perform the subcontract work. J&D Electric purchased some of the materials used in the dental office from Wesco, but failed to fully pay Wesco for these materials. On July 11, 2001, Wesco attempted to send notice by mail to Westport of J&D Electric's outstanding bill for materials purchased between March 2001 and June 25, 2001, in order to notify Westport of Wesco's claim for a materialman's lien on the property. The post office returned this notice to Wesco because Wesco failed to attach sufficient postage. Wesco added postage and again mailed its notice to Westport on July 25, 2001. On July 19, Westport, having received no notice of lien, made a payment to J&D Electric. Although it is unclear when notice was actually received, it is clear that no payments were made by Westport after receipt of notice. By the time it received notice, Westport had paid J&D Electric almost everything it was owed. Wesco filed an affidavit claiming a lien on September 13, 2001.

Westport filed suit to remove Wesco's claimed lien, and Wesco filed suit for damages and foreclosure of its lien. The two lawsuits were consolidated. Westport filed a summary motion "to remove invalid or unenforceable lien" pursuant to section 53.160 of the property code, and Wesco opposed the motion. *See id*. § 53.160. The trial court initially denied Westport's summary motion, but when the parties filed cross-motions for summary judgment, the trial court granted Westport's request for summary judgment made on the same grounds as its earlier motion. Wesco then brought this appeal.

2

**STANDARD OF REVIEW**

Because the propriety of a summary judgment is a question of law, we review the trial court's decision *de novo*. *Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994); *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.). The standards for reviewing a motion for summary judgment are well established: (1) the movant for summary judgment has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law; (2) evidence favorable to the nonmovant will be taken as true in deciding whether there is a disputed material fact issue precluding summary judgment; and (3) every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985).

**DISCUSSION**

**Construction of the Notice Provision**

In Wesco's first issue, it argues that the trial court mistakenly interpreted the notice provisions contained in the materialman's lien statute[1] by finding that Wesco did not comply with its terms. The statute sets out deadlines for giving notice of unpaid balances owed by subcontractors to materialmen to the original contractor and the property owner and requires timely notice as a prerequisite for a valid lien claim.[2] For Wesco's lien claim to be valid, Wesco must have effectively

---

[1] "If notice is sent by registered or certified mail, deposit or mailing of the notice in the United States mail in the form required constitutes compliance with the notice requirement." Tex. Prop. Code Ann. § 53.003 (West 2002).

[2] "A claimant other than an original contractor must give the notice prescribed by this section to be valid." Tex. Prop. Code Ann. § 53.056(a) (West 2002).

3

notified Westport by July 15 of any unpaid balance for materials delivered in May.[3] Because it attempted to send a notice on July 11, before the deadline, Wesco argues that it timely notified Westport under the statute. When that notice was returned to Wesco for insufficient postage, and the notice was re-sent on July 25, 2001, Westport argued that there was no timely notice of lien for nonpayment for supplies delivered to J&D Electric prior to the end of May.

Wesco contends that its deposit of the notice with insufficient postage substantially complies with the statutory requirements of section 53.003 of the property code because Westport eventually received a notice. Despite the insufficient postage, it argues, Wesco deposited the notice within the statutory time period, and the statute requires nothing more. Westport responds that notice mailed with insufficient postage does not comply with statutory requirements because "sending" notice by mail necessarily includes attaching sufficient postage. Because Wesco failed to timely notify Westport of its lien claim, Westport argues, the lien it claims is invalid. We agree.

This case calls for interpretation of the notice provisions of Texas's mechanic's and materialman's lien statute. *See* Tex. Prop. Code Ann. §§ 53.003, .056. Statutory interpretation is a legal matter subject to *de novo* review. *Bragg v. Edwards Aquifer Auth.*, 71 S.W.3d 729, 734 (Tex. 2002); *Pacesetter Pools, Inc. v. Pierce Homes, Inc.*, 86 S.W.3d 827, 831 (Tex. App.—Austin 2002,

---

"If the lien claim arises from a debt incurred by a subcontractor, the claimant must give to the original contractor written notice of the unpaid balance. The claimant must give the notice not later than the 15th day of the second month following each month in which all or part of the claimant's labor was performed or material delivered . . . ." *Id*. § 53.056(b) (West 2002).

[3] Although Wesco's lien claim included unpaid balances for materials delivered in March and April, it is clear from the statute that no valid lien could attach for those balances, as their deadlines for notice, May 15 and June 15, respectively, had long since passed. Wesco advances no argument regarding those balances or deadlines.

4

no pet.) (citing *Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 868 (Tex. App. —Austin 2001, pet. denied)).

"The primary rule of statutory interpretation is to ascertain and give effect to the intent of the legislature." *Southwestern Life Ins. Co. v. Montemayor*, 24 S.W.3d 581, 583 (Tex. App.—Austin 2000, pet. denied) (citing *Union Bankers Ins. Co. v. Shelton*, 889 S.W.2d 278, 280 (Tex. 1984)). If the legislature's intent can be gathered from a reasonable interpretation of the statute as written, further implications are forbidden. *Id*. A court may not add words to a statute unless necessary to give effect to clear legislative intent. *See Jones v. Liberty Mut. Ins. Co.*, 745 S.W.2d 901, 902 (Tex. 1988); *Montemayor*, 24 S.W.3d at 583. Courts should take into account the entire statute, not isolate disputed provisions. *Texas Workers' Compensation Commission v. Continental Casualty Company*, 83 S.W.3d 901, 905 (Tex. App.—Austin 2002, no pet.). When the legislature employs a term in one section of a statute and excludes it in another, courts presume that the exclusion was intentional, and that the legislature had a reason for excluding it. *Fireman's Fund County Mut. Ins. Co. v. Hidi*, 13 S.W.3d 767, 769 (Tex. 2000).

Courts must also presume that the legislature intended a reasonable result. *Montemayor,* 24 S.W.3d at 585; *Enochs v. Brown*, 872 S.W.2d 312, 318 (Tex. App.—Austin 1994, no writ). We must be mindful of the consequences of possible constructions when interpreting a statute, *Continental Casualty Co.*, 83 S.W.3d at 905, because courts should not construe statutes in a way that leads to foolish or absurd consequences. *Montemayor,* 24 S.W.3d at 584-85 (citing *Meno v. Kitchens*, 873 S.W.2d 789, 792 (Tex. App.—Austin 1994, writ denied)).

The materialman's lien statute is liberally construed for the purpose of protecting laborers and materialmen. *Industrial Indem. Co. v. Zack Burkett Co.*, 677 S.W.2d 493, 495 (Tex. 1984) (per curiam); *Hayek v. Western Steel Co.*, 478 S.W.2d 786, 795 (Tex. 1972). Giving "'liberal construction' means to give the language of a statutory provision, freely and consciously, its commonly, generally accepted meaning, to the end that the most comprehensive application thereof may be accorded, without doing violence to any of its terms." *Maryland Cas. Co. v. Smith*, 40 S.W.2d 913, 914 (Tex. Civ. App.—Dallas 1931, no writ). Liberal interpretation of a statute does not permit doing violence to the language in the statute. *Deep E. Tex. Reg'l Mental Health & Mental Retardation Svcs. v. Kinnear*, 877 S.W.2d 550, 563 (Tex. App.—Beaumont 1994, no writ).

Wesco argues first that the statute does not require postage to be affixed in order for notice to be effective, and that the absence of the word "postage" in the statute indicates a legislative intent that postage not be required for mailed notice to be considered effective. It offers two other provisions of the property code for comparison. The first allows notice to debtors by certified mail to be considered complete when that notice is deposited with the United States post office, "postage prepaid and addressed to the debtor" at its last known address. Tex. Prop. Code Ann. § 51.002(e) (West 2002). The second considers notice by lessors to tenants delivered when deposited with the United States post office, "properly addressed with postage prepaid." *Id. § 59.043*(b) (West 2002).

Section 53.003, in contrast, is silent on the proper address or prepayment of postage. It allows notice by certified or registered mail to be considered effective upon "deposit or mailing of the notice in the United States mail in the form required." The previous two provisions do not include the phrase "in the form required," perhaps because they specify the form required: correctly

6

addressed and with postage prepaid. Section 53.003 permits use of certified or registered mail and recognizes compliance with whatever form the U.S. Postal Service requires. The Postal Service requires postage. 39 C.F.R. § 3030 (2003).[4]

Construing the statute to not require postage at all would produce absurd results. Here, the first attempt at notice would have been effective; there would be no need for Wesco to re-send the returned correspondence because the statute's requirements for constructive notice would have already been met. According to that construction, "notice" that would never and could never arrive would nonetheless be considered effective against Westport.

In an attempt to temper this extreme result, Wesco asserts that its interpretation would indeed require some kind of notice. Because the statute should be liberally interpreted for the benefit of materialmen, Wesco argues, its timely but postage-deficient notice should, combined with its postage-prepaid but untimely notice, qualify as substantial compliance with the statute. Wesco characterizes the return of its notice for insufficient postage as a delay in delivery by the Postal Service and argues that it substantially complied with the requirement that it mail its notice within the statutory time period because the initial mailing occurred on July 11, and the general purpose of the statute's notice provision was achieved.

---

[4] "Postage must be fully prepaid on all mail at the time of mailing, except as authorized by law or this Schedule. Except as authorized by law or this Schedule, mail deposited without prepayment of sufficient postage shall be delivered to the addressee subject to payment of deficient postage, returned to the sender, or otherwise disposed of as specified by the Postal Service. Mail deposited without any postage affixed will be returned to the sender without any attempt at delivery." 39 C.F.R. § 3030 (2003).

7

The liberal construction for which Wesco argues does not excuse failure to comply with the statutory requirement that the materialman provide "timely written notice." *See Texas Constr. Assocs., Inc., v. Balli*, 558 S.W.2d 513, 518-19 (Tex. Civ. App.—Corpus Christi 1977, no writ). In *Balli*, the materialman failed to provide timely written notice of part of its claim to the owner and contractor. *Id*. Even though the contractor and the owner already had actual notice of the debt, liberal construction did not save the materialman's lien from his failure to provide timely written notice. *Id*. Where, as here, the party entitled to notice does not have actual notice, the requirement should apply with as much or more force. Liberal construction cannot read the timing requirements out of the statute. *Id*. at 518.

Because Wesco tried to mail its notice, it claims its efforts constitute substantial compliance with the statute. It is true that substantial compliance is sufficient to perfect a materialman's lien. *First Nat'l Bank in Graham v. Sledge*, 653 S.W.2d 283, 285 (Tex. 1983). In *Sledge*, the court held that notice sent by regular instead of certified mail substantially complied with the notice requirements where it was undisputed that notice was actually received timely. *Id*. at 287; *see also Occidental Neb. Fed. Sav. Bank v. East End Glass Co.*, 773 S.W.2d 687, 689 (Tex. App.—San Antonio 1989, no writ) ( "If in fact a written notice is received, the method by which the notice was delivered is immaterial."). Substantial compliance excuses deficiencies in materialman's lien notices such as addressing the notice to the wrong entity where it was sent to and received by the right person in a "system of interlocking corporate shells," *Occidental*, 773 S.W.2d at 688, or failure to write the statement or bill in the usual or customary manner, where notice was timely.

8

*Hunt Developers, Inc. v. Western Steel Co.*, 409 S.W.2d 443, 449 (Tex. Civ. App.—Corpus Christi 1966, no writ).

However, "substantial compliance" is not a license to ignore statutory requirements. *See Conn, Sherrod, & Co. Inc. v. Tri-Electric Supply Co.*, 535 S.W.2d 31, 34-35 (Tex. Civ. App.—Tyler 1976, writ ref'd n.r.e.) (holding that liberal interpretation and substantial compliance did not allow courts to alter meaning of statutory language, and that timely filing of affidavit without correct jurat was not substantial compliance as required to perfect materialman's lien). In *Sledge*, for instance, the court was careful to note that, in looking for substantial compliance, it determined whether the liens at issue were valid by comparing the steps taken to perfect them with the statutory requirements. *Sledge*, 653 S.W.2d at 286. Failure to satisfy the notice provisions of the statute was fatal to the lien claim in *Sledge*; the court examined the only notices sent within the statutory time limit and decided that, because they did not contain the proper information, they did not substantially comply with the statute. *Id.* at 287.

The notice requirement, unlike the technical defects excused by substantial compliance, plays a critical role in achieving the purposes of this statute. The materialman's lien statute is designed to protect contractors, subcontractors, and owners. *Cabintree, Inc. v. Schneider*, 728 S.W.2d 395, 396 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd). The purposes of notice are: (1) to give those parties entitled to notice an opportunity to protect their interests, and (2) to prevent surprise. *Philbrook v. Berry*, 679 S.W.2d 651, 653 (Tex. App.—Houston [1st Dist.] 1984, orig. proceeding). There are many examples of courts applying the notice provision to protect the interests of the parties entitled to notice. In disputes between the materialman and the property owner, the

9

owner is the party entitled to notice, and Texas courts apply the statute's protections to the owner. In *Raymond v. Rahme*, 78 S.W.3d 552, 560 (Tex. App.—Austin 2002, no pet.), for example, the court required timely notice to the property owner in order for substantial compliance to make the lien valid. The court examined the only notice that arrived timely and found it inadequate because it did not contain a required warning to the owner that personal liability might attach if the debt remained unpaid. *Id.* at 561. Similarly, the *Occidental* court explains the object of the statute's notice provision: "[t]he common sense reason for requiring a materialman to give notice to the owner is to let the owner know that the contractor has not paid the materialman . . . and give[] the owner an opportunity to retain funds still under [the] owner's control and to avoid the imposition of a statutory lien." *Occidental*, 773 S.W.2d at 688. Wesco reads these cases to hold that only the *owner* may claim protections from the notice provision. Wesco quotes *Hunt Developers*, which says, "[t]he Legislature did not intend that the materialman should lose his lien through the technicalities of a warning, where the *owner* was not misled to his prejudice," to support the proposition that prejudice to the *general contractor* does not justify holding the materialman to the statutory notice requirements of the statute.[5] 409 S.W.2d at 449 (emphasis added). Because E&M Properties, the owner, received sufficient notice, Wesco argues, the lien can be valid as to Westport without timely notice to Westport. Under Wesco's interpretation, the statute is not intended to protect the interests

---

[5] Here Wesco uses "notice" and "warning" interchangeably, but the warning is a portion of the notice to the owner that explains that personal liability might attach if the bill remains unpaid. *See Hunt Developers, Inc. v. Western Steel Co.*, 409 S.W.2d 443, 446-47 (Tex. Civ. App.—Corpus Christi 1996, no writ).

10

of general contractors.  This reading would nullify the requirement that notice be provided to the general contractor.

Neither the principles of statutory construction nor case law permit this interpretation because it does violence to the terms of the materialman's lien statute by reading the notice provision[6] completely out of the statute.  *See  Kinnear*, 877 S.W.2d at 563*; Maryland Cas. Co.*, 40 S.W.2d at 914.  Furthermore, Wesco is mistaken in its assumption that the statute is not intended to protect the interests of general contractors.  *Hunt Developers* itself holds substantial compliance "especially sufficient where *no one* has been misled to his prejudice." *Hunt Developers*, 409 S.W.2d at 449 (emphasis added).  Other cases indicate that where the materialman does not timely notify the general contractor entitled to notice under the materialman's statute, the materialman has not substantially complied.  *See, e.g.*, *Stone Fort Nat'l Bank v. Elliot Elec. Supply Co.*, 548 S.W.2d 441, 445 (Tex. Civ. App.—Tyler 1977, writ ref'd n.r.e.).  In *Stone Fort*, the materialman claimed a lien because it "substantially complied" with the statute by properly and timely filing its affidavit and notifying the owner of the outstanding bill and of the affidavit.  *Id.*  The court disagreed with this contention of substantial compliance because it ignored notice to the original contractor.  *Id.*  The notice to the original contractor "is for the benefit of the original contractor.  It is the only notice that the original contractor personally receives." *Id*. at 445-46.  Because the materialman failed to

---

[6] "If the lien claim arises from a debt incurred by a subcontractor, the claimant must give to the original contractor written notice of the unpaid balance.  The claimant must give the notice not later than the 15th day of the second month following each month in which all or part of the claimant's labor was performed or material delivered . . . ."  Tex. Prop. Code Ann. § 53.056(b).

11

provide that notice, it had not complied with the requirements of the materialman's lien statute. *Id*. at 446.

Wesco draws comparisons between this case and *Don Hill Construction Company v. Dealers Electrical Supply Company*, 790 S.W.2d 805 (Tex. App.—Beaumont 1990, no writ). In *Don Hill*, the materialman properly notified the property owner, but failed to timely notify the general contractor of part of its claim. *Id*. at 809-10. The owner, despite acknowledging it had received notice of the nonpayment, did not retain funds for the materialman, but paid the general contractor instead. *Id*. at 810. The court held that the properly notified owner could not escape its own liability because notice to the general contractor was untimely. *Id*. at 809. In this case, the owner, E&M Properties, has not escaped liability. E&M Properties properly withheld funds and eventually surrendered them. *Don Hill* does not stand for the proposition that the general contractor can be held liable under the materialman's lien statute without proper notice because the materialman notified others; the general contractor in *Don Hill* argued that, because its notice was untimely, it could not be held liable for nonpayment under the materialman's lien statute in the property code. *Id*. at 811. The court held the general contractor liable under a different theory not presented here.[7] In other words, the court found the owner liable under the materialman's lien statute, but the court did not find the general contractor liable under the materialman's lien statute.

---

[7] The *Don Hill* court held that, because the owner paid the general contractor after receiving the materialman's notice of lien, the funds it paid were trust funds held for the benefit of the materialman, and transfer of those funds did not change their character. *Don Hill Constr. Co. v. Dealers Elec. Supply Co.*, 790 S.W.2d 805, 811-12 (Tex. App.—Beaumont 1990, no writ). Westport did not receive the contested amount in trust funds from E&M Properties, and neither party raises the issue of trust funds here. Accordingly, we do not reach it.

Texas's materialman's lien statute strikes a balance between interests of materialmen and general contractors by imputing notice to contractors to whom notice has been properly mailed. This scheme mirrors the evidentiary presumption that a properly mailed notice is received at its destination. When a sender has done everything necessary for notice to arrive, notice is considered effective as to the intended recipient. *See Mosser v. Plano Three Venture*, 893 S.W.2d 8, 11 (Tex. App.—Dallas 1994, no writ) (holding service by mail complete upon deposit of properly addressed envelope, postage prepaid, with Postal Service); *Mobile Am. Sales Corp. v. Gradley*, 612 S.W.2d 625, 628 (Tex. Civ. App.—Beaumont 1980, no writ) (reciting rule that presumption that mailed letter was received only arises upon proof of proper address, stamp, and mailing); *Employers' Nat'l Life Ins. Co. of Dallas, Tex. v. Willits*, 436 S.W.2d 918, 921 (Tex. Civ. App.—Amarillo 1968, writ ref'd n.r.e.) (noting that letters properly addressed, stamped, and mailed are sufficient to raise presumption that they were received). This presumption relieves the sender of the difficult burden of showing that the recipient actually received notice. So does Texas's materialman's lien statute. *See Buckner v. Anderson-Dunham, Inc.*, 482 S.W.2d 350, 351-52 (Tex. Civ. App.—Eastland 1972, no writ) (holding notice properly addressed and marked as postage paid certified mail was effective when mailed, not when received). Neither encompasses the absurd result that receipt of notice is imputed to a party to whom notice was never properly sent. The statute and case law treat certain parties as entitled to notice. Correspondence without postage will not and cannot ever reach the party entitled to notice. Imputing notice to the intended recipient when the sender had not done everything necessary for notice to arrive would be nonsensical and unfair, and would render the notice provisions of the statute a meaningless ritual.

In other contexts, Texas courts hold that mailing a notice requires proper postage. There has been a longstanding general rule that a mailed notice is only effective if it has been properly mailed, meaning properly addressed and bearing the correct amount of postage. *Johnson Serv. Co. v. Climate Control Contractors, Inc.*, 478 S.W.2d 643, 645-46 (Tex. Civ. App.—Austin 1972, no writ). Notice that is required by statute before suspending a real estate license is effective when it is properly stamped, addressed, certified, and mailed. *Tunnell v. Texas Real Estate Comm'n*, 761 S.W.2d 123, 124 (Tex. App.—Dallas 1988, no writ); *Texas Real Estate Comm'n v. Howard*, 538 S.W.2d 429, 433 (Tex. Civ. App.—Houston [1st Dist.] 1976, writ ref'd n.r.e.). A lessor's contractual duty to notify by mail that did not specify that proper postage be affixed was not satisfied by a letter that actually arrived at the correct address, but with postage due of $0.50. *Rosenthal v. Executive Car Leasing Co. of Houston*, 435 S.W.2d 168, 169-70 (Tex. Civ. App.—Houston [1st Dist.] 1968, no writ.) In these cases, insufficient postage meant ineffective notice.

The district court's decision that Wesco's lien is invalid because its attempt to timely notify Westport failed for lack of sufficient postage is consistent with the statute. The effort Wesco made did not satisfy the notice requirements mandated by the materialman's lien statute. We overrule the first issue.

**Attorney's Fees**

In Wesco's second issue, it argues that the district court abused its discretion in awarding Westport the full amount of its attorney's fees under section 53.156 of the property code. The award of attorney's fees rests in the sound discretion of the district court and will not be reversed absent a clear showing of abuse of discretion. *Oake v. Collin County*, 692 S.W.2d 454, 455 (Tex.

14

1985); *West Tex. Rehab. Ctr. v. Allen*, 810 S.W.2d 870, 874 (Tex. App.—Austin 1991, no writ). A trial court abuses its discretion when it acts unreasonably and arbitrarily or without reference to guiding principles. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991); *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). In a proceeding to foreclose a materialman's lien or declare such a lien or claim invalid, the court may award costs and reasonable attorney's fees that are equitable and just. Tex. Prop. Code Ann. § 53.156 (West 2002).

Wesco argues that the district court improperly awarded attorney's fees because Westport incurred the majority of those fees after and because of the court's error. The district court initially denied Westport's summary motion to remove an invalid or unenforceable lien, but later granted Westport's motion for partial summary judgment made on the same grounds: untimely notice because of insufficient postage. At the attorney's fees hearing, the district court acknowledged that granting the first motion would have resulted in lower attorney's fees. Wesco puts great emphasis on the court's comment: "Some of this burden might need to be mine."

Westport responds by identifying a variety of factors the district judge should consider in determining attorney's fees, including the quality of legal work, the time and effort required, the nature and intricacies of the case, the extent and type of the attorney's responsibilities, and any benefits from the litigation. *See Del Valle Indep. Sch. Dist. v. Lopez*, 863 S.W.2d 507, 513 (Tex. App.—Austin 1997, pet. denied). Consideration of such factors is important in determining attorney's fees. *Arthur Anderson & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); *Lubbock County v. Strube*, 953 S.W.2d 847, 858 (Tex. App.—Austin 1997, pet. denied). Where, as here, the court took evidence and considered such factors, it did not act without reference to guiding principles.

15

Obviously, disposing of any case earlier would result in lower attorney's fees for all involved. Not all cases are resolved as efficiently as, in hindsight, they could have been. However, the touchstone of whether attorney's fees can be awarded is whether they were reasonable and necessary at the time the party incurred them. *See Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 10 (Tex. 1991). This determination of reasonableness is a question for the trier of fact. *Id*. at 12. The district court found that the fees were reasonable and necessary, including those incurred between the initial summary motion and the motion for partial summary judgment. Wesco continued to pursue its lien. Westport had no choice but to continue to incur attorney's fees in defending its position. We cannot say that the district court acted unreasonably, arbitrarily, or without reference to guiding principles in so finding. We leave the award of attorney's fees undisturbed.

## CONCLUSION

We hold that the district court did not err in granting summary judgment invalidating Wesco's lien because Wesco failed to provide timely notice. The grant of attorney's fees to Westport was not unreasonable, arbitrary, or made without reference to guiding principles. Accordingly, we affirm the district court on both points.

David Puryear, Justice

Before Chief Justice Law, Justices Kidd and Puryear

Affirmed

Filed: April 8, 2004

16